IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CORINE O'DELL,                          :
                                        :
                    Plaintiff,          :        CIVIL ACTION NO. 16-5211
                                        :
        v.                              :
                                        :
NATIONAL RECOVERY AGENCY,               :
                                        :
                    Defendant.          :

## MEMORANDUM OPINION

Smith, J.                                                    March 6, 2018

In this case, the plaintiff seeks to have the court certify a class of individuals who she alleges have been subject to violations of the Fair Debt Collection Practices Act by the defendant when it improperly aged a large number of consumer accounts in its efforts to collect debts owed to a local hospital. This is a tenuous case involving a technical violation, and the harm is difficult to pinpoint. Nonetheless, in a motion for class certification, it is established law that "merits inquiry is not permissible when [the] merits issue is unrelated to a Rule 23 requirement." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 294 (3d Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). Consequently, because the plaintiff has Article III standing and the requirements of Federal Rule of Civil Procedure 23 have been met, the court will reluctantly grant the motion for class certification.

## I.    PROCEDURAL HISTORY

On September 30, 2016, the plaintiff, Corine O'Dell, filed a complaint alleging that the defendant, National Recovery Agency ("NRA"), violated the Fair Debt Collection Practices Act ("FDCPA"). Doc. No. 1. NRA filed an answer to the complaint on December 9, 2016. Doc. No. 4. O'Dell filed an amended complaint on December 16, 2016. Doc. No. 7. NRA filed an

answer to the amended complaint on December 30, 2016.  Doc. No. 9.  As this matter was originally scheduled to proceed to compulsory arbitration under this court's local civil rules, the court entered an order on January 17, 2017, which required the parties to complete all discovery by the date of the arbitration hearing.  Doc. No. 17.  On March 29, 2017, the court granted the parties' joint motion to extend the discovery period and directed the clerk of court to reschedule the arbitration hearing for on or about June 13, 2017.  Doc. No. 21.  At NRA's request, the court later entered an order on May 12, 2017, continuing the arbitration hearing for an additional period of approximately 60 days.  Doc. No. 34.

O'Dell filed a motion to amend the amended complaint on May 16, 2017, which the court granted without opposition after a telephone conference with counsel for the parties on June 8, 2017.  Doc. Nos. 36, 42.  On the same date, and at the court's direction, the clerk of court docketed O'Dell's second amended complaint. Doc. No. 43.  In the second amended complaint, O'Dell brought claims for violations of the FDCPA in two individual counts and one class action count.  *See* Second Am. Compl. at 13–15.  Under the class action count, O'Dell indicated that she would ask the court to certify two separate classes:

> **Account return class:** (a) all consumers with a Pennsylvania address; (b) that incurred a debt from Lancaster General Health; (c) for which Defendant sought to collect on the debt; (d) that thereafter the debt was returned to Lancaster General Health; (e) and subsequently placed back with Defendant; (f) after which Defendant placed a trade line on the consumers' credit reports for the returned debt; (g) that reported the date placed for collection as the date it had received the account the second time; (h) during a period beginning one year prior to the filing of this initial action and ending 21 days after the service of the initial complaint filed in this action.

> **Improper date reported:** (a) all consumers with a Pennsylvania address; (b) that incurred a debt from Lancaster General Health; (c) for which Defendant sought to collect on the debt by placing a trade line on the consumers' credit reports; (d) and reporting the date placed for collection as the date of first delinquency (e) during a period beginning one year prior to the filing of this initial action and ending 21 days after the service of the initial complaint filed in this action.

*Id.* at 15–16.

NRA filed an answer to the second amended complaint on June 16, 2017. Doc. No. 46. The court entered an order on July 6, 2017, which, *inter alia*, (1) directed the parties to engage in fact and class certification discovery, and (2) set a schedule for O'Dell to move for class certification and for NRA to respond to the motion. Doc. No. 49. The court granted NRA's motion to file an amended answer to the second amended complaint on July 24, 2017. Doc. Nos. 50-51.

O'Dell filed a motion for class certification on September 14, 2017. Doc. No. 59. In the motion, O'Dell clarified that she is now only seeking certification of one class, rather than two.[1] *See* Pl.'s Mot. for Class Certification at 1. NRA responded to the motion for class certification on October 13, 2017.[2] Doc. No. 67. O'Dell filed a reply to NRA's response on October 23, 2017. Doc. No. 69. On October 31, 2017, the court heard oral argument on the motion. Doc. No. 72.

On February 1, 2017, the court held a telephone conference with counsel for the parties during which O'Dell stipulated to dismissal of her individual claims in counts I and II of the second amended complaint. Doc. Nos. 74, 75. The court then entered an order dismissing those counts from the second amended complaint without prejudice. Doc. No. 75. Thus, the only remaining claim is the class claim and the motion for class certification is now ripe for adjudication.

---

[1] As explained more below, this sole class is almost identical to the "Account return class" identified in the second amended complaint. *Compare* Second Am. Compl. at 15–16, *with* Pl.'s Mot. for Class Certification at 1.
[2] NRA's response is also docketed at Docket Number 68.

## II.    FACTUAL BACKGROUND[3]

The plaintiff, Corine O'Dell, owed eight medical debts to Lancaster General Health ("LGH"). *See* Second Am. Compl. at 2, Doc. No. 43. After O'Dell failed to pay LGH, LGH assigned these debts to NRA for collection. *See id.* In its effort to collect these debts, NRA placed eight trade lines on O'Dell's credit report. *See id.*; *see also* Pl.'s Mot. for Class Certification at Ex. F, Doc. No. 59-10.

In April 2015, LGH upgraded their computer systems.[4] *See* Mem. of Law in Supp. of Pl. Corine O'Dell's Mot. for Class Certification at ECF p. 6 ("Pl.'s Mem."), Doc. No. 59-1; *see also* Pl's Mot. for Class Certification at Ex. C, Dep. of Ashley Chille at 162–63, Doc. No. 59-7; *Id.* at Ex. D, Dep. of Gregory Dickinsheets at 42 ("Dickinsheets Dep."), Doc. No. 59-8. Accordingly, LGH asked NRA to "return the active LGH accounts within its possession." Pl.'s Mem. at ECF p. 6; *see also* Dickinsheets Dep. at 42, 51. In accordance with LGH's request, NRA returned the accounts to LGH. *See* Dickinsheets Dep. at 42, 51. Among those accounts were O'Dell's eight accounts, accounts belonging to the putative class members, and others. *See id.* at 42–52; *see also* Pl.'s Mem. at ECF pp. 6–7; Def. National Recovery Agency's Br. in Opp. to Pl.'s Mot. for Class Certification ("Def.'s Br.") at ECF pp. 8–9, Doc. No. 68. Eventually, after LGH finished the computer upgrades, LGH turned the accounts back over to NRA for collection. *See* Dickinsheets Dep. at 50–52. Once NRA received the accounts from LGH, NRA listed the accounts as new, rather than returned.

Specifically, "NRA issued new account numbers, reported the 'date placed for collection' as the date the accounts were returned and inputted, and also reported the 'date of first delinquency' as the date the accounts were returned and inputted." Pl.'s Mem. at ECF p. 6

---

[3] This section only includes the facts relevant to the remaining claim, *i.e.*, the class claim.
[4] Around the same time, NRA was also updating their computer systems. *See* Pl's Mot. for Class Certification at Ex. D, Dep. of Gregory Dickinsheets at 38–52, Doc. No. 59-8.

(citation omitted); *see also id.* at Exs. A, B, Doc. Nos. 59-5, 59-6 (listing placement date as December 12, 2015, for most of the LGH accounts); Dickinsheets Dep. at 51–54. O'Dell contends that NRA made this mistake with thousands of accounts and that "[b]y changing these dates and making them more recent, NRA's conduct resulted in lowering Plaintiff's credit score and credit worthiness." Pl.'s Mem. at ECF p. 7; *see also id.* at Ex. A (listing returned LGH accounts). O'Dell further contends that by "making the debts more recent it had the effect of 're-aging' the debts so that they would stay on Plaintiff's credit report two years longer than they should." Pl.'s Mem. at ECF p. 7. She alleges that NRA's actions, as to these returned LGH accounts, violated the FDCPA. *See id.* at ECF pp. 6–8. She asks this court to certify a class for individuals residing in zip code 17512—a putative class of approximately 1,130 members.[5] *See id.* at ECF p. 14; *see also* Pl.'s Mot. for Class Certification at Ex. B (listing the accounts of individuals in zip code 17512 who held LGH accounts that NRA allegedly improperly aged).

### III. DISCUSSION

#### A. Article III Standing

As a preliminary matter, the court must first address whether O'Dell has standing to pursue this claim on behalf of the putative class. NRA contends that O'Dell does not meet the requirements of Article III standing. Def.'s Br. at ECF p. 9. A class representative in a putative class action must show

> that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless [the class representatives] can thus demonstrate the requisite

---

[5] While O'Dell's memorandum of law states that the class consists of approximately 1,300 members, *See* Pl.'s Mem. at ECF p. 14, counsel for both parties subsequently submitted a letter to the court clarifying that there was a mistake in Exhibit B (this letter is not on ECF). Specifically, some accounts were improperly included in Exhibit B. According to O'Dell's counsel, the only accounts that should be considered as members of the class are those where the placement date is either December 12, 2015, or December 13, 2015. The accounts with a different placement date are not to be considered as class members. These other accounts were mistakenly included in Exhibit B by NRA. After removing those accounts, the putative class consists of approximately 1,130 class members.

case or controversy between themselves personally and [the defendants], none
may seek relief on behalf of himself or any other member of the class.

*Warth v. Seldin*, 422 U.S. 490, 502 (1975) (alterations to original) (citation and internal quotation

marks omitted).

To establish Article III standing a plaintiff must first show an injury in fact. *See Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992). There must have been "an invasion of a legally

protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not

conjectural or hypothetical . . . ." *Id.* (citation and internal quotation marks omitted). In

addition, a plaintiff must show causation, *i.e.*, there must be a "causal connection between the

injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged

action of the defendant, and not ... th[e] result [of] independent action of some third party not

before the court." *Id.* (alterations in original) (citation and internal quotation marks omitted).

Furthermore, the injury must be one that can be redressed by court action. *See id.* at 561.

Specifically, "it must be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Id.* (citation and internal quotation marks omitted).

Here, NRA argues that the mere re-aging of accounts is not an injury in fact, and that

even if it is, this claim is either (1) moot or (2) not ripe. The court will address NRA's

arguments in turn.

### 1.     Injury in Fact

Looking first to injury in fact, the Supreme Court recently addressed this requirement in

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo* the Court addressed the question of

whether Thomas Robins had Article III standing when Spokeo, Inc.—a "people search

engine"—provided false, but not necessarily bad, information about him. *Spokeo*, 136 S. Ct. at

1544–45. The website had reported Robins "is married, has children, is in his 50's, has a job, is

relatively affluent, and holds a graduate degree." *Id.* at 1546. Robins alleged that Spokeo's actions violated the Fair Credit Reporting Act. *See id.* The Ninth Circuit held that Robins sufficiently pled an injury in fact because he asserted violation of a statutory right that was particularized. *See id.* at 1545, 1546 (citing *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412–14 (9th Cir. 2014), *vacated and remanded*, 136 S. Ct. 1540 (2016)). The injury was particularized because the injury happened to *him* and was not an injury generally afflicted upon a group at large. *See id.* at 1546 (citing *Robins*, 742 F.3d at 413–14). The Supreme Court reversed and held that the Ninth Circuit failed to consider that an injury must be both particularized *and* concrete. *Id.* at 1545, 1548

For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Id.* at 1548 (citation and internal quotation marks omitted). For an injury to be concrete it must actually exist, *i.e.*, the plaintiff must have actually been injured. *Id.* It is insufficient that a defendant merely violated a statute. *See id.* A "bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. This does not, however, mean that the injury needs to be tangible—some concrete injuries are intangible. *See id.* Specifically, a "risk of real harm" can "satisfy the requirement of concreteness." *Id.*

Last year, the Third Circuit had an opportunity to address the Supreme Court's decision in *Spokeo*. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (2017). In *Horizon*, the four named plaintiffs brought suit on behalf of a putative class alleging that Horizon Healthcare Services, Inc. "inadequately protected their personal information" in violation of the Fair Credit Reporting Act. *Id.* at 629. Specifically, individuals stole two laptops containing their personal information from Horizon. *See id.* The district court had dismissed the

action under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and the plaintiffs appealed. *See id.*

The Third Circuit reversed. *See id.* at 641. The Third Circuit began by noting that "[i]n the context of a motion to dismiss, we have held that the [i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[] some specific, identifiable trifle of injury." *Id.* at 633 (alterations in original) (citation and internal quotation marks omitted). The court adopted a narrow reading of *Spokeo* and stated that

> [a]lthough it is possible to read the Supreme Court's decision in *Spokeo* as creating a requirement that a plaintiff show a statutory violation has caused a "material risk of harm" before he can bring suit, we do not believe that the Court so intended to change the traditional standard for the establishment of standing.

*Id.* at 637 (citation omitted). The court explained that after *Spokeo* there are

> two tests for whether an intangible injury can (despite the obvious linguistic contradiction) be "concrete." The first test, the one of history, asks whether "an alleged intangible harm" is closely related "to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." If so, it is likely to be sufficient to satisfy the injury-in-fact element of standing. But even if an injury was "'previously inadequate in law,'" Congress may elevate it "'to the status of [a] legally cognizable injur[y].'" Because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is ... instructive and important." The second test therefore asks whether Congress has expressed an intent to make an injury redressable.

*Id.* (alterations in original) (internal citations omitted).

*Horizon* is arguably in tension with *Spokeo*. However, the extent to which the two may be in conflict is immaterial in this case because the outcome is the same under either test. Under *Horizon*, this case meets the injury-in-fact requirement because Congress in enacting the FDCPA "expressed an intent to make [this] injury redressable." *Id.* Under a broader reading of *Spokeo*, one that requires proof of a real risk of harm, this case still meets the injury in fact requirement.

When a trade line is added to a credit account, it has a negative impact on that individual's credit score. Trade lines, by statute, expire after seven years. *See* 15 U.S.C. § 1681c(a)(4) ("[N]o consumer reporting agency may make any consumer report containing . . . [a]ccounts placed for collection . . . which antedate the report by more than seven years." (alterations to original)). When a trade line is improperly re-aged so that it expires after the seven-year time limit has run, (*e.g.*, a trade line that would properly expire in 2018, is set to expire in 2020) there is a real risk that the individual will be harmed, in the form of a lower credit score.

NRA argues that the putative class members have not been harmed because it has either fixed the trade line dates or removed them altogether. This argument is immaterial to the injury-in-fact requirement, because, even under the broad reading of *Spokeo* all that is required is a one time "risk of real harm," not a continuing or ongoing "risk of real harm." *See Spokeo*, 136 S. Ct. at 1549. NRA's argument regarding their corrective actions is more appropriately considered in the mootness analysis.

## 2.    Mootness

Turning to NRA's mootness argument, it contends that these claims are moot because it has either corrected the dates on these trade lines or removed them altogether. To support its mootness argument, NRA cites two cases: *County of Los Angeles v. Davis*, 440 U.S. 625 (1979) and *Swift & Co. v. United States*, 276 U.S. 311 (1928). In *Davis*, the Court held that a case may be moot when two requirements are met: "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (citations, internal citations, and internal quotation marks omitted). Ultimately, "the

central question of all mootness problems is whether . . . [the court can provide] meaningful relief." *Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 39 (3d Cir. 1985).

Here, O'Dell's request for injunctive relief is likely moot. Notably, O'Dell does not appear to dispute this contention. *See* Reply in Further Supp. of Pl. Corine O'Dell's Mot. for Class Certification at ECF p. 13 ("Pl.'s Reply") ("While arguably, if Plaintiff were seeking injunctive relief in this matter, perhaps the claim would be moot[.]"), Doc. No. 69. NRA contends that it has either removed the accounts in question or properly fixed the dates. Additionally, this conduct is unlikely to recur. For this conduct to recur two unlikely events would have to happen. First, LGH would have to upgrade its computer systems again (an event that probably will not happen again in the near future). Second, NRA would have to improperly age the accounts again. Thus, an injunction is unlikely to provide meaningful relief.

This does not, however, moot O'Dell's case because "the availability of damages or other monetary relief almost always avoids mootness." *Jersey Cent. Power & Light Co.*, 772 F.2d at 41. Moreover, even if NRA has removed *all* the trade lines involved in this case, that would not "completely and irrevocably eradicate the effects of the alleged violation." *Davis*, 440 U.S. at 631. It is entirely possible that the class members suffered an economic harm when their accounts were improperly aged (or at the very least, it is plausible that they suffered a statutory harm). Fixing the accounts did not "completely and irrevocably eradicate" this harm because it did not provide any monetary relief. Consequently, O'Dell's case is not moot.

### 3. Ripeness

NRA contends that O'Dell's claim is not yet ripe because she "is able to show no evidence of diminished credit worthiness or other harm and damages suffered as a result of

NRA's alleged actions." Def.'s Br. at ECF p. 13. While injury is a factor in the ripeness inquiry, this argument is better considered in the context of the injury-in-fact inquiry.

The purpose of the ripeness doctrine is to prevent plaintiffs from bringing premature cases. *See Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003) ("The function of the ripeness doctrine is to determine whether a party has brought an action prematurely . . . ."). It ensures that the facts of the plaintiff's case are adequately developed prior to adjudication. *See id.* In determining whether a case is sufficiently ripe for adjudication, courts should consider the following factors:

> are the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.

*Id.* at 433–34 (citation omitted).

Here, the facts are sufficiently developed. The central fact of this case is that NRA improperly aged a number of LGH accounts. All the necessary facts surrounding this event have already occurred and there are no facts that the court needs to wait to develop before adjudicating the claim. Additionally, to the extent it is relevant in the ripeness inquiry, O'Dell has shown sufficient "injury." *See supra* Section III.1.a. Accordingly, O'Dell's claim is ripe for adjudication.

### B.     Class Requirements Under Rule 23(a)

Under Federal Rule of Civil Procedure 23(a), a class must meet the four requirements of numerosity, commonality, typicality, and adequacy:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative
parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Here, O'Dell's proposed class is:

(a) all consumers with a Pennsylvania address and a zip code of 17512; (b) that
incurred a debt from Lancaster General Health; (c) for which Defendant sought to
collect on the debt; (d) that thereafter the debt was pulled back by Lancaster
General Health; (e) and subsequently returned to Defendant; (f) after which
Defendant placed a trade line on the consumers' credit reports for the returned
debt; (g) that reported the date placed for collection and the date of delinquency as
the date the accounts had been returned and inputted; (h) during a period
beginning one year prior to the filing of this initial action and ending 21 days after
the service of the initial complaint filed in this action.

Pl.'s Mem. at ECF p. 9. The court will examine each of the Rule 23(a) requirements in turn.

## 1.      Numerosity

Numerosity is satisfied because the proposed class of approximately 1,130 members is
sufficiently large that joinder would be impracticable. Rule 23(a)(1) requires that "the class is so
numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). While
courts typically avoid putting a number on this requirement, this requirement is generally
satisfied when the class exceeds 40 members. *See Steward v. Abraham*, 275 F.3d 220, 227–28
(3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action,
but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds
40, the first prong of Rule 23(a) has been met."). Here, NRA does not dispute that O'Dell's
proposed class satisfies this requirement. Consequently, the court finds that Rule 23(a)(1) is
satisfied.

## 2.      Commonality

The commonality requirement is satisfied because there are common questions of law
and fact that will generate common answers. Rule 23(a)(2) requires that "there are questions of

law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule does "not require identical claims or facts among class member[s]." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (alteration in original) (citation and internal quotation marks omitted). The emphasis in this rule is not on the *number* of common questions. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–59 (2011). In fact, "[e]ven a single [common] question will do," *id.* at 359 (alterations in original) (citation and internal quotation marks omitted), so long as "a classwide proceeding [is capable of] generat[ing] common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (alterations to original) (emphasis in original) (citation and internal quotation marks omitted). Moreover, the emphasis in this inquiry is not on the sufficiency of the class representative, but on the sufficiency of the putative class as a whole. *See Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 270 (E.D. Pa. 2000) ("[T]he numerosity and commonality requirements . . . evaluate the sufficiency of the class itself . . . ." (alterations to original)).

O'Dell contends that

> there are common questions of law and fact here. Factually, each Class Member had inaccurate, more recent, dates reported to the credit bureaus concerning their debts with Lancaster General Health. Legally, whether the reporting of inaccurate dates to the credit bureaus violates the FDCPA is a question of law for each Class Member.

Pl.'s Mem. at ECF p. 15. The court agrees with O'Dell on both points: there are common factual questions and there is a common legal question. Moreover, the answer to the common legal question, whether NRA's inaccurate date-reporting violates the FDCPA, will generate a common answer that will likely resolve all the class members' claims. If this inaccurate date-reporting violates the FDCPA then, so long as each class member was *actually* subjected to NRA's inaccurate date-reporting, NRA will be liable under the FDCPA. Because one common question is sufficient, *Wal-Mart*, 564 U.S. at 359, and there is at least one here, Rule 23(a)(2) is satisfied.

### 3.    Typicality

O'Dell's claim is typical of the class because she is pursuing the same legal theory and there are few, if any, factual differences between her claim and those of the putative class members. Rule 23(a)(3) asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (citations and internal quotation marks omitted). "Unlike the numerosity and commonality requirements, . . . the typicality requirement assess the sufficiency of the named plaintiff[]." *See Kline*, 196 F.R.D. at 270 (citation omitted).

Here, O'Dell stipulated to a dismissal of her individual claims. *See* February 1, 2018 Order, Doc. No. 75. The only claim she now seeks to bring is the same as the class claim, *i.e.*, that NRA violated the FDCPA when it inaccurately reported the dates on her trade lines. *See* Second Am. Compl. at 15–19.

Factually, O'Dell's claim as it relates to this legal theory is substantially similar, if not identical, to the claims of the other class members. Legally, both O'Dell and the class members need to show that improperly aging accounts is a violation of the FDCPA. While it is unclear whether O'Dell and the class members need to show that NRA intended to re-age the accounts or whether this is a strict liability violation, the court can find no reason why O'Dell would pursue a different legal theory than the other class members.

O'Dell contends that this is a strict liability violation. *See* Pl.'s Reply at ECF pp. 22–23. She argues that 15 U.S.C. § 1692k(c) is an affirmative defense. *See id.* at 22. She further

contends that it does not apply here because this was not a bona fide error and NRA did not have procedures in place to prevent it from occurring. *See id.* at 23.

Section 1692k(c) prevents a finding of liability in cases where the violation was an unintentional, bona fide error and the defendant had procedures in place that were "reasonably adapted to avoid any such error[s]." 15 U.S.C. § 1692k(c) (alteration to original). In light of this provision, O'Dell and the other class members may need to show that the purported error was either intentional or not bona fide. But this is unlikely to impact the legal theory O'Dell pursues. Because each account in this case was part of the same event (LGH returning accounts to NRA and NRA re-aging them), each class member (and O'Dell) will have to prove the same level of intent. As the same intent requirement will apply to O'Dell's and all the other class members' claims, the same legal theory will almost certainly apply to O'Dell's and all the other class members' claims.

The only possible relevant legal or factual difference here is the *number* of improperly aged trade lines. NRA contends that because O'Dell had more trade lines, her damages are potentially greater than most of the other class members. Def.'s Br. at ECF p. 18. NRA's argument is not compelling because the number of trade lines is unlikely to affect any potential damages award in this case because it appears O'Dell is pursuing statutory damages under 15 U.S.C. § 1692k. Under this provision, the court can award "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). Thus, NRA's attempts to characterize the damages award as compensatory—*i.e.*, that 8 trade lines equals more damages—is most likely inaccurate. Under the statutory award scheme pursued by O'Dell, it is unlikely that she would recover more damages on the

basis of the number of trade lines on her credit report.[6]  *See* Pl.'s Reply at ECF p. 26 ("Plaintiff is not entitled to more damages than any Class Member because Plaintiff is pursuing only statutory damages provided by the FDCPA.").

NRA's other argument, that "Plaintiff's class definitions completely ignore her FCRA allegations and additional FDCPA claims against NRA," Def.'s Br. at ECF p. 18, is irrelevant in light of her stipulation to dismiss her individual claims.  For these reasons, the court finds that O'Dell's claim is typical of the claims of the putative class members.

### 4.    Adequacy

O'Dell and counsel are adequate representatives because both are capable of pursuing and protecting the interests of the putative class.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  On the adequacy prong, a court must determine *both* whether class counsel and the representative plaintiff will adequately represent the class.  *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998).  "First, the adequacy of representation inquiry tests the qualifications of the counsel to represent the class.  Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.* at 312 (internal quotation marks and citations omitted).  The court will address O'Dell's adequacy as class representative first.

### a.    Adequacy of Class Representative

The primary inquiry in the adequacy of representation analysis is whether there are conflicts between the class representative and the putative class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856–57

---

[6] It is, however, possible that O'Dell would recover more damages because she is class representative.  15 U.S.C. § 1692k(a)(2)(B) provides that the named plaintiff can recover "such amount . . . as could be recovered under subparagraph (A)."  Subparagraph (A) provides for damages up to $1,000.  *See* 15 U.S.C. § 1692k(a)(2)(A).

(1999). In other words, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) (citations omitted). "Representativeness is not appropriate where the named plaintiffs have different claims and/or circumstances than other members, thereby creating the possibility of a less than vigorous advancement of the case for all plaintiffs involved." *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 600 (M.D. Pa. 1997).

Here, O'Dell has dropped all her individual claims and is only proceeding with the class claim. The majority of NRA's arguments center on potential conflicts between O'Dell's individual claims and the class claim. Def.'s Br. at ECF pp. 18–20. Because O'Dell has dropped her individual claims, these arguments are no longer relevant.

On the class claim, the only conflict NRA identifies is that O'Dell "has significantly greater damages under the FDCPA due to the number of LGH accounts she alleges were re-aged by NRA on her credit report." Def.'s Br. at ECF p. 20. This argument is unavailing for the same reasons discussed in the section on typicality. Namely, because O'Dell and the class are only pursuing statutory damages, the number of trade lines placed on O'Dell's account will not cause her to recover greater damages. Moreover, even if they did, this would not be a sufficient conflict to destroy adequacy. O'Dell would still be incentivized to maximize her recovery under her claim, and because she is pursuing the same legal theory as the rest of the class, she would also be pursuing a maximum recovery for the class.

The court cannot find, nor has NRA identified, any other potential conflicts that would destroy O'Dell's adequacy as a class representative. There is no indication in the record that she

is unfamiliar with the facts of this case or that she is insufficiently interested in litigating this action. Consequently, the court finds that O'Dell is an adequate class representative.

b. Adequacy of Class Counsel

Rule 23(g) elaborates on Rule 23(a)(4)'s requirement that class counsel be adequate. Specifically, Rule 23(g) states that:

> **(1) *Appointing Class Counsel*.** Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> > **(A)** must consider:
> >
> > > **(i)** the work counsel has done in identifying or investigating potential claims in the action;
> > >
> > > **(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> > >
> > > **(iii)** counsel's knowledge of the applicable law; and
> > >
> > > **(iv)** the resources that counsel will commit to representing the class;
> >
> > **(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
> >
> > **(C)** may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
> >
> > **(D)** may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
> >
> > **(E)** may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g). As a general matter, "these standards are easily met . . . ." § 3:72, Adequacy of Class Counsel under Rule 23(a)(4), 1 *Newberg on Class Actions* § 3:72 (5th ed.). "On the issue of professional competence of counsel for the class representative, the presumption fairly arises that all members of the bar in good standing are competent." *Zeno v. Ford Motor*

*Co., Inc.*, 238 F.R.D. 173, 188 (W.D. Pa. 2006) (internal quotation marks and citation omitted). While Rule 23(g) directs the court to consider whether class counsel has "experience in handling class actions," the fact that class counsel has little class action experience does not destroy his or her adequacy as class counsel. *See* § 3:73, Adequacy of Class Counsel under Rule 23(a)(4)— Counsel's Knowledge and Experience With Substantive Law or Class Action Litigation, 1 *Newberg on Class Actions* § 3:73 (5th ed.); *see, e.g.*, *Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 486 (D. Minn. 2003) (holding counsel adequate despite minimal prior class action experience).

Here, NRA's primary argument is that counsel of record for O'Dell, Zemel Law LLC, has "neither the experience nor the resources to adequately litigate this class action lawsuit." Def.'s Br. at ECF p. 20. Specifically, NRA asserts that "Zemel Law, []LLC is an extremely small boutique consumer litigation office consisting of only two recently barred attorneys, who to Defendant's counsel's knowledge, have never certified a class action in an FDCPA case." *Id.*

While counsel's class action experience is a relevant inquiry, it is not dispositive. Moreover, the court finds that, contrary to NRA's assertion, Zemel Law is sufficiently experienced to represent this class. Zemel Law is a consumer litigation firm. *See* Zemel Law: Consumer Protection (Last Visited Feb. 20, 2018), http://www.fcra-attorney.com/ (listing FDCPA litigation as one of the firm's three main practice areas). The firm focuses on FDCPA, FCRA, and TCPA litigation. *See id.* Additionally, Zemel Law recently reached a class action settlement in *Rincon-Marin v. Credit Control, LLC*, No. 17-0007 (D. Conn. 2017), and is involved in several other FDCPA cases. *See, e.g.*, *McCants v. Revenue Group*, No. 17-cv-2227 (E.D. Pa. 2017).

The court finds that, in light of Zemel Law's experience (albeit, limited) in handling class actions, experience handling FDCPA cases, knowledge of the FDCPA, and diligent efforts in pursuing the class claim in this case, all three of the first Rule 23(g)(1)(A) factors weigh in favor of appointing Zemel Law as class counsel.

Moreover, the court finds that the fourth factor—"the resources that counsel will commit to representing the class"—also weighs in favor of appointing Zemel Law as class counsel. NRA's arguments regarding the size of Zemel Law are unavailing. Zemel Law's lengthy and detailed briefs in this case are indicative of adequate resources, time, and personnel, and the court can find no reason why Zemel Law will not continue devoting sufficient resources to this case. Moreover, this case is not a particularly complex class action lawsuit. It involves a single legal question: whether NRA's re-aging of these LGH accounts was a violation of the FDCPA. And it involves few factual questions, most of which appear to be either undisputed or easy to prove. Consequently, a large firm with extensive resources is not needed. The court finds that Zemel Law is adequate as class counsel.

### C.    Rule 23(b)'s Requirements

Once the Rule 23(a) requirements have been established, a court must then consider whether one of the Rule 23(b) requirements—the requirements specifying the various types of classes—have been satisfied. *See* Fed. R. Civ. P. 23(b). Here, O'Dell is seeking to certify the class under Rule 23(b)(3). To establish a 23(b)(3) class, a prospective class representative must show that (1) common questions of fact and law predominate, and (2) the class action is the superior method of litigation for the claims. *See id.* The court will consider each question in turn.

### 1.    Common Questions of Fact and Law Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  As the Third Circuit has explained:

> One relevant "guidepost[ ] that direct[s] the predominance inquiry[ ]" is "that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members[.]"  *Sullivan*, 667 F.3d at 297.  "[*Wal–Mart v.*] *Dukes* actually bolsters [this] position, making clear that the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim."  *Id.* at 299.  Rule 23 does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances.  Rather, predominance is satisfied if common issues predominate.  *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir.2002).  "[T]he focus of Rule 23(b)(3) is on the predominance of common questions [.]"  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, —— U.S. —— –, 133 S.Ct. 1184, 1195, 185 L.Ed.2d 308 (2013) (emphasis in original).  A district court "analyze[s] predominance in the context of Plaintiffs' actual claims."  *Neale*, 794 F.3d at 372.

*Reyes v. Netdeposit*, LLC, 802 F.3d 469, 489 (3d Cir. 2015) (alterations in original).  "The presence of individual questions . . . does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) . . . ." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985).

For the reasons identified in the court's discussion on the typicality, commonality, and adequacy factors, the court finds that common issues of law and fact predominate in this case.  To briefly reiterate: (1) the same legal issue will apply to and resolve all the class members' claims; (2) all class members will be pursuing the same legal theory; (3) individualized damages inquiries are not needed; (4) the claims are almost factually identical (from a legal perspective, they probably are factually identical); and (5) this case does not involve difficult issues of proof (it will not be difficult for the class members to show that they held accounts that were in the group of accounts NRA improperly aged).

**2.       The Class Action is the Superior Method of Litigation for this Claim**

In making the superiority determination, courts should consider the following factors:

> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions; **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members; **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and **(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, the class action is the superior method of litigation. The class members do not have a significant interest in "individually controlling the prosecution or defense of separate actions . . . ." *Id.* The recovery on these claims is small; there are not individual defenses available; and the same legal theory will likely govern each claim.

Nevertheless, NRA contends that the class members do have a significant interest in individually controlling their actions. NRA argues that because the class members could recover greater damages if they pursued these claims individually, the class action is not the superior method of litigating these claims.

Damages for this class action will be calculated under 15 U.S.C. § 1692k. Section 1692k provides a debt collector shall be liable

> in the case of a class action, (i) [for] such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . . .

15 U.S.C. § 1692k(a)(2)(B) (alteration to original). In oral argument, NRA contended that its net worth is $84,000. A net worth this low could foreseeably result in a *de minimis* recovery for each individual class member (one percent of $84,000 is $840; $840 split amongst a class of 1,300 members is approximately $0.65 per class member). If the putative class members were to

pursue these claims on their own, they could recover actual damages or statutory damages up to $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A). While this argument has some facial appeal, ultimately, NRA's efforts to protect the rights of the class members to recover more money from it are unavailing. *See Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 330–31 (D. Conn. 2009) (discussing disingenuous nature of this argument).

As a preliminary matter, it is far from clear that NRA's net worth is as low as it contends. At oral argument, O'Dell contended that NRA is about to receive a windfall recovery in a pending claim (purportedly in the millions of dollars). O'Dell and NRA are in the process of performing discovery on NRA's net worth. For purposes of this motion, however, the court has sufficient information to make the superiority determination.

Courts facing this issue typically hold that unless the defendant's net worth is negative, superiority is not destroyed. *See Kohnlenberger v. Dickinson*, No. 94 C 4696, 1996 WL 131736, at *2 (N.D. Ill. Mar. 15, 1996) (noting that class action is not superior where defendant's net worth is "zero or less"); *see, e.g.*, *Hicks v. Client Servs., Inc.*, 257 F.R.D. 699, 701 (S.D. Fla. 2009) (collecting cases and refusing to decertify class despite evidence individual class members may only receive $1.24); *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 546–47 (N.D. Cal. 2005) (finding superiority prong met even though class members would likely only receive $0.25 per person); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 55 (D. Conn. 2000) ("Although class members may recover smaller damages amounts than would have been the case in individual actions, the Court finds that the class action vehicle is nonetheless superior, given the remote likelihood that such individual actions actually would be brought."). *But see Barkouras v. Hecker*, No. 06-cv-0366, 2006 WL 3544585, at *4 (D.N.J. Dec. 8, 2006) (holding that

superiority was satisfied even though one of defendants was alleged to have a negative net worth). Here, NRA has not contended that its net worth is negative.

Additionally, Rule 23(c) permits class members in Rule 23(b)(3) classes to opt out and bring their own claims. *See* Fed. R. Civ. P. 23(c)(2)(B); *Lemire*, 256 F.R.D. at 330–31 (discussing the significance of the opt out provision in FDCPA class actions where the defendant has contended individual recovery will be *de minimis*); *see also* Fed. R. Civ. P. 23(c)(2)(B) advisory committee's note to 2003 amendment ("The opportunity to request exclusion from a proposed settlement is limited to members of a (b)(3) class."). Because Rule 23(b)(3) gives class members the option to opt out of the class, class members who desire to bring their own claims can still do so. Thus, NRA's professed concern is adequately protected even when the class is certified, *i.e.*, class members who desire to win greater awards from NRA can still pursue them. Consequently, the court finds that the first factor weighs in favor of a finding of superiority.

Second, the court is not aware of, nor has NRA identified, any class members who have initiated "any litigation concerning the controversy . . . ." Fed. R. Civ. P. 23(b). Consequently, the second factor weighs in favor of a finding of superiority.

Third, it is desirable to concentrate "the litigations of the claims in [this] forum . . . ." *Id.* These are small claims that the class members likely will not pursue individually if the class is not certified. Additionally, the events giving rise to this case occurred in the Eastern District of Pennsylvania, and O'Dell and the defendant reside in this district. And finally, because the class has been limited to class members with a 17512 zip code, it is very likely that all (or at least, most) of class members will reside within this district.

NRA, however, has argued that O'Dell's decision to limit the class to zip code 17512 actually cuts against a finding of superiority. Specifically, NRA argues that by limiting the

putative class to "approximately 1,600 members in one Pennsylvania zip code. . . . Plaintiff's counsel failed to adequately protect the right [sic] and interests of the other 63,000 consumers that were allegedly affected by NRA's reporting of LGH debts in 2016." Def.'s Br. at ECF pp. 20–21 (internal citation omitted). This argument is also unavailing.

While the Third Circuit has yet to address whether a class action brought under section 1692k can be limited by geography, the Seventh Circuit persuasively addressed that question in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343–44 (7th Cir. 1997). In that case, the court rejected the defendant's argument that the statutory cap of $500,000 should be interpreted to exclude multiple classes based on geography. *See id.* at 344. The court noted that the plain language of the statute did not prohibit multiple classes. *See id.* The court also noted that there is "no way of telling whether . . . repeated class actions are possible or likely . . . ." *Id.*

The court agrees with the Seventh Circuit's focus on the text of the statute. The statute broadly states: "in the case of a class action . . . ." 15 U.S.C. § 1692k(a)(2)(B). It does not cabin the number of class actions that can be pursued or prohibit the use of geographical limitations in the definition of the class. Because the unrestrictive language of the statue is clear, the court does not need to wade into the well-articulated policy arguments presented by NRA. *See* Def.'s Brief at ECF p. 20–21.

Fourth, "the likely difficulties of managing [this] class action" are small. As discussed above in the sections on commonality and typicality, there is only one relevant legal issue and there are few, if any, factual differences. Moreover, the answer to that legal question will likely resolve every single claim in this case. Consequently, the managerial challenges presented by this class action are small.

### D.     <u>Ascertainability</u>

The Third Circuit has held that "the members of a [23(b)(3)] class [must be] identifiable at the moment of certification." *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). Here, O'Dell has clearly defined the class. Under her definition of the class, the class members will be easy to identify.

### IV.     CONCLUSION

While, as noted in the introduction, this is a tenuous case from both a factual and legal viewpoint, this putative class meets the requirements of Rule 23. Moreover, O'Dell has standing to assert this claim on behalf of the class. Accordingly, the court will reluctantly grant the motion for class certification.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.