UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORINE O'DELL, | ) Case No.: 5:16-cv-05211-EGS |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| NATIONAL RECOVERY AGENCY, | ) |
| Defendant. | ) |

---

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**On the Brief:**

Daniel Zemel, Esq.
Elizabeth Apostola, Esq.
**Zemel Law, LLC**
1373 Broad Street, Suite 203-C
Clifton, New Jersey 07013
(T) 862-227-3106
dz@zemellawllc.com
Attorneys for Plaintiff

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. STANDARD OF REVIEW ................................................................................................. 2

III. ARGUMENT ....................................................................................................................... 3

    A. NRA's Article III and Mootness Arguments Are Precluded Under the Law of the Case Doctrine ................................................................................................................................ 3

    B. NRA Has Not Met Its Burden In Establishing The Bona Fide Error Defense ................ 7

IV. CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Abraham v. Ocwen Loan Servicing, LLC, 2017 U.S. Dist. LEXIS 98004 (E.D. Pa., 2017) ......... 5

Beshli v. Dep't of Homeland Sec., 272 F. Supp. 2d 514 (E.D. Pa 2003) ...................................... 3

Bowse v. Portfolio Recovery Assocs., LLC, 218 F. Supp. 3d 745 (N.D. Ill. 2016) ...................... 6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). ............................................................................. 2

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988) ............................................. 4

City of Mesquite v. Aladdin's Castle, 455 U.S. 283 (1982). ......................................................... 6

Disimone v. Browner, 121 F.3d 1262 (9th Cir. 1997) ................................................................... 3

Gold v. Midland Credit Mgmt, 306 FRD 623 (N. D. Cal. 2014). ................................................. 6

Hines v. Consol. Rail Corp., 926 F.2d 262 (3d Cir. 1991) ........................................................... 2

O'Dell v. National Recovery Agency, 2018 U.S. Dist. LEXIS 36088 (E.D. Pa 2018). .......... 4, 5, 6

Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265 (3d Cir. 2010). .......................................... 3

Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111 (3d Cir.
     1997). ....................................................................................................................................... 4

Reichert v. Nat'l Credit Sys. Inc., 531 F.3d 1002 (9th Cir. 2008) ................................................ 11

Richberg v. Palisades Collection, LLC, 247 F.R.D. 457 (E.D. Pa. 2008). ................................... 8

Sayles v. Advanced Recovery Sys., 865 F.3d 246 (5th Cir. 2017). ............................................... 6

Sayles v. Advanced Recovery Sys., Inc., 206 F. Supp. 3d 1210 (S.D. Miss., 2016) ...................... 5

Thomas v. Bible, 983 F.2d 152 (9th Cir. 1993). ............................................................................ 3

United States v. 107.9 Acre Parcel of Land in Warren Twp., 898 F.2d 396 (3d Cir. 1990). ......... 3

Wilhelm v. Credico, Inc., 519 F.3d 416 (8th Cir. 2008) .............................................................. 10

## I. INTRODUCTION

Plaintiff Corine O'Dell is a Pennsylvania consumer, representing a class of Pennsylvania consumers, who all had their medical debts reported incorrectly and illegally on their credit reports by Defendant National Recovery Agency causing harm to their creditworthiness and their credit scores. This Memorandum of Law is filed in Opposition to Defendant's Motion for Summary Judgment and the Defendant's purported Statement of Undisputed Material Facts ("D-SUMF"). In addition, Plaintiff's own motion for summary judgment was filed on June 15, 2018 [ECF 88].[1] The record as it stands overwhelmingly precludes summary judgment for the Defendant and in fact, the undisputed material facts demonstrate that summary judgment should be entered in favor of Plaintiff, finding that NRA has violated Sections 1692e, e(2), e(8), e(10), and 1692f of the Fair Debt Collection Practices Act ("FDCPA").

In its motion and supporting memorandum of law ("Defendant's MSJ"), Defendant advances only two brief and unsupported arguments: that Plaintiff lacks Article III standing to bring her claims and that NRA is shielded from FDCPA liability based on the bona fide error defense. Surprisingly, NRA's brief reads just like the script of Bill Murray's Groundhog Day. Defendant spends four of its six pages of legal argument dedicated to topics that it has already briefed and which have already been adjudicated by this Court in the class certification motion practice. Like the first time NRA presented its arguments, NRA's arguments continue to miss their mark and

---

[1] To avoid burdening the Court with duplicative filings, the term "P-SUMF" used herein refers to the statement of undisputed material facts filed in support of Plaintiff's motion for summary judgment. [ECF 88]. The term "Counterstatement" used herein refers to Plaintiff's separate counterstatement response to Defendant's statement of undisputed material facts, filed contemporaneously with this response as Exhibit 1. Plaintiff otherwise incorporates by reference herein her memorandum in support of her motion for summary judgment and accompanying statement of undisputed material facts.

1

again, NRA makes false representations to the Court to support those arguments.[2] However, now, in addition to being unsupported, NRA's previously adjudicated arguments are legally precluded under the law of the case doctrine.

NRA then spends a paltry two pages addressing the affirmative defense known as the bona fide error, which it believes, incorrectly, entitles it to summary judgement as a matter of law because of NRA's unsupported assertion that it *generally* maintains policies to comply with the FDCPA. Defendant's argument is noticeably short on law and substance, painting broad strokes without pointing to a single relevant detail for how NRA's policies addressed or could have prevented the specific "bona fide error" from occurring. In fact, NRA completely fails to address the three distinct elements required in order to establish the bona fide error, presumably given its inability to do so under a rigorous analysis, and **fails to attach a single policy or procedure as an exhibit to its Motion**. The failure to attach or even address a single policy or procedure concerning the violation at issue, makes it abundantly clear that NRA *cannot* establish the bona fide error defense. Accordingly, NRA's Motion for Summary Judgment must be denied as it falls tremendously short of its burden of proof or raises topics as to which there are genuine disputes of material fact.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hines v. Consol. Rail Corp.,* 926 F.2d 262, 267 (3d Cir. 1991). A party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion, and

---

[2] In Plaintiff's prior briefing on Class Certification, Plaintiff made it clear that Defendant was misrepresenting the facts of this case to the Court. Nonetheless, Defendant continues to make false statements in its moving brief to this Court.

2

identifying the aspects of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the party makes this initial showing, the burden shifts to the non-moving party to demonstrate that there is in fact a genuine issue of material fact. *United States v. 107.9 Acre Parcel of Land in Warren Twp.,* 898 F.2d 396, 398 (3d Cir. 1990). The nonmoving party, in meeting its burden, is entitled to all reasonable inferences in its favor. *Pignataro v. Port Auth. of N.Y. & N.J.,* 593 F.3d 265, 268 (3d Cir. 2010). Ultimately, the nonmoving party must present sufficient evidence from which a reasonable jury could return a verdict in the non-moving party's favor. *Id.*

In the present matter, Defendant has failed to meet its initial burden and Plaintiff has presented sufficient evidence from which a jury could return a verdict in her favor, and as such Defendant is not entitled to summary judgment as a matter of law.

### III. ARGUMENT

#### A. NRA's Article III and Mootness Arguments Are Precluded under the Law of the Case Doctrine.

NRA is precluded from bringing the issue of standing before the Court as it has already been resolved through the class certification motion practice. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Beshli v. Dep't of Homeland Sec.,* 272 F. Supp. 2d 514, 520 (E.D. Pa 2003), *citing Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir. 1993). "In order for the doctrine to apply, the issue in question must have been 'decided explicitly' or by necessary implication in [the] previous disposition." *Id., citing Disimone v. Browner,* 121 F.3d 1262, 1266 (9th Cir. 1997).

This doctrine is similar to the doctrine of res judicata or, alternatively, claim and issue preclusion, in that it limits relitigation of an issue once it has been decided by the Court. It

3

"protects against the agitation of settled issues" and prevents courts from entertaining endless appeals on the same issue. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (*quoting* 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice P0.404[1], p. 118 (1984)). This rule maintains consistency and avoids reconsideration of matters once decided during the course of a single continuing lawsuit. *Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997). More importantly, it precludes a defendant like NRA from simply rehashing arguments within the same case, where it disagrees with a court's prior opinion.

NRA's arguments regarding standing are barred as a matter of law. In Defendant's Opposition to Plaintiff's Motion for Class Certification, pages 4-7 were specifically devoted to arguing Plaintiff's lack of injury-in-fact and that Plaintiff's claims were moot. *See* Defendant's Opposition to Plaintiff's Motion for Class Certification. [ECF 68]. Both parties also addressed these issues at oral argument before the Court. After hearing both sides, the Court granted Plaintiff's Motion for Class Certification, and within that Opinion, the Court clearly and specifically addressed both of NRA's standing arguments, definitively finding Plaintiff did suffer an injury-in-fact and her claims were not moot:

> Fixing the accounts did not 'completely and irrevocably eradicate' this harm because it did not provide any monetary relief. Consequently O'Dell's case is not moot…Here, the facts are sufficiently developed. The central fact of this case is that NRA improperly aged a number of LGH accounts. All the necessary facts surrounding this event have already occurred and there are no facts that the court needs to wait to develop before adjudicating the claim… O'Dell has shown sufficient 'injury.' *See supra* Section III.1.a.

*O'Dell v. National Recovery Agency,* 2018 U.S. Dist. LEXIS 36088, *16-17 (E.D. Pa 2018).

NRA fails to provide any reason that the Court should again analyze Plaintiff's Article III standing. *See generally,* Def MSJ. In its prior Opinion, the Court did not state that if Plaintiff

4

could not establish actual injury, there would be a lack of injury-in-fact. Rather, the Court found that NRA's false credit reporting presented a risk of real injury, exactly like that contemplated by the Supreme Court in Spokeo. "When a trade line is improperly re-aged so that it expires after the seven-year time limit has run, (*e.g.*, a trade line that would properly expire in 2018, is set to expire in 2020) there is a real risk that the individual will be harmed, in the form of a lower credit score." *O'Dell*, 2018 U.S. Dist. LEXIS 36088, at *14. This is logically and legally sound. Defendant does not dispute that the trade lines at issue were set to remain on Plaintiff's credit report for a period longer than allowed by law; instead it argues that because they were removed prior to that period, there was no injury. However, there is no doubt that a real risk existed that Defendant would report longer than allowed by law and harm Plaintiff. *Id.* As shown by Defendant's own account notes, and contrary to Defendant's assertions in its Statement of Facts, NRA did not immediately remove or correct the incorrect tradelines from Plaintiff's credit report, but instead did so only *after* she filed suit against them. D-SUMF ¶23, 24; *Counterstatement* ¶ 23, 24. Further, Defendant also does not dispute that it reaged Plaintiff's accounts by altering the "placed for collection" date; instead it argues that because Plaintiff did not apply for credit during this time frame, there was no injury to be had. *See* D-SUMF ¶16,18, 20; *Counterstatement* ¶ 16, 18, 20. However, had Plaintiff applied for credit during this time frame she would have been injured and thus it is clear that Defendant's conduct presented a risk of real injury just like that contemplated by the Supreme Court. *See Abraham v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 98004, at *106 (E.D. Pa., 2017) ("As the case law makes clear, it is sufficient under *Spokeo* if the FDCPA claim asserts that the character of a debt has been misrepresented since that is the kind of injury the FDCPA was intended to guard against, and no additional harm need be alleged"); *Sayles v. Advanced Recovery Sys., Inc*., 206 F. Supp.

5

3d 1210, (S.D. Miss. Aug. 26, 2016) ("Congress intended [§ 1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors") *affirmed* at *Sayles v. Advanced Recovery Sys.*, 865 F.3d 246, 250 (5th Cir. 2017); *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) ("a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party"). Accordingly, although Plaintiff does not allege actual injury, injury-in-fact exists nonetheless.

NRA also fails to provide any reason that this Court should again analyze mootness. Since Plaintiff's Motion for Class Certification, there has been no change in circumstance concerning the mootness of Plaintiff's claims. Previously, the Court clearly held that Plaintiff's class claims were *not* moot: the class members suffered a statutory harm, and the harm was not eradicated because removal of the accounts did not provide the monetary relief that the consumer was entitled to. *O'Dell,* 2018 U.S. Dist. LEXIS 36088, at *16.[3] This too is logically and legally sound. When a debt collector violates the law, it cannot simply fix the error and then state that the claim is moot. This would prevent any debt collector from ever being subject to liability, and would undermine the statutory scheme wherein a victim of a violation is entitled to monetary relief. As noted by Plaintiff in her prior briefing of this issue: It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289

---

[3] Within NRA's Motion for Summary Judgment, NRA also states that Plaintiff Corine O'Dell obtained a windfall given that her debts were forgiven. This is news to both Plaintiff and her Counsel. It appears NRA decided to forgive Plaintiff's debts while it was writing its Motion for Summary Judgment and decided to inform Plaintiff and her counsel of that forgiveness, not by formal letter or direct communication, but by means of its Motion to the Court. The veracity of NRA's statement must be questioned: NRA is not the creditor of the debt, so it is impossible for NRA to forgive a debt it does not own. Second, even if NRA had the authority to waive the debts belonging to LGH, this does not compensate Plaintiff for her injury. The FDCPA sets forth specific guidelines for successful Plaintiffs: a maximum of $1,000 in statutory damages for the statutory harm suffered. A defendant cannot simply provide statutory damages of its own choosing *vis a vis* debt forgiveness.

6

(1982). "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Id.* at 289, n. 10 (*citations omitted*). Until a plaintiff obtains the monetary relief obtainable by right, the claim cannot be considered moot. *See Gold v. Midland Credit Mgmt*, 306 FRD 623 (N. D. Cal. 2014). A perfect example of this is an FDCPA violation found within a collection letter. A consumer is not prohibited from bringing suit after receiving the letter merely because the form letter was changed to comply with the FDCPA. Accordingly, this Court has already opined that Plaintiff's claims are not moot and as such, these arguments are not properly before the Court in Defendant's Motion for Summary Judgment.

      B.  <u>NRA Has Not Met Its Burden In Establishing The Bona Fide Error Defense.</u>

NRA has woefully failed to establish its burden of proof in seeking summary judgment in this matter. Most notably, NRA does not move for summary judgment arguing that Plaintiff is unable to establish her claim that it reported false, deceptive, and misleading information to a credit reporting agency. NRA concedes that it violated the FDCPA as a matter of law, with no factual inquiries left to doubt this reality. *See* Defendant's Opposition to Plaintiff's Motion for Class Certification, page 8-9 [ECF 68]; D-SUMF ¶18. Instead, NRA argues that it is entitled to summary judgment because of a single unsupported affirmative defense: the bona fide error defense.

NRA fails to provide any substantive argument in support of its defense, showing it is simply not capable of establishing the bona fide error defense in this case. In its Motion for Summary Judgment, NRA completely fails to lay out the three pronged analysis required to determine whether this defense is applicable to the case and not only fails to identify a single policy or procedure which applies to the error which occurred, but fails to include *any* policies or procedures as exhibits in support of its motion. It seems likely that NRA did not provide the test

required to prove bona fide error because a legal analysis of this test will show that NRA is unable to establish any of the three prongs.

To prevail on the bona fide error defense in this District, NRA must prove: (1) its violation of the FDCPA was unintentional, (2) the FDCPA violation was due to an underlying bona fide error, and (3) the bona fide error occurred despite maintenance of procedures reasonably adapted to avoid any such errors." *Richberg v. Palisades Collection, LLC,* 247 F.R.D. 457, 467 (E.D. Pa. 2008). NRA's Motion, which at best can be read to address the first and second prong in passing and completely ignore analysis under the third prong, evidences that NRA has neither established its burden of proof, nor adequately briefed its argument.

Despite the voluminous record presented in this nearly two-year litigation, consisting of four depositions and almost one thousand pages of document production (significantly more than the average FDCPA case), NRA only spends two pages of its brief dedicated to the single defense it is trying to establish to avoid liability. Rather than focus on <u>even a single detail</u> of its policies or procedures, NRA paints a broad stroke of compliance. *See* D mSJ, 11-12. NRA fails to point to the title of a single policy or quote any policy language which they believe applies to preclude them from liability. *Id.* Further, NRA fails to attach *any* policies or procedures at all, in support of their argument, much less ones applicable to the error which occurred. This is likely due to the fact that only a small portion of the document production even addressed policies and procedures and those policies dealt only with the handling of e-Oscar disputes and consumer communications, neither of which are currently at issue in this case. Plaintiff's corporate representative testified that NRA maintains no policies or procedures regarding inputting of consumer information by the IT department, or the handling of an inventory or assignment file sent by the creditor with debt account information. *See* P-SUMF ¶ 15, 17; *Counterstatement,* ¶ 7.

8

Rather than presenting the Court with *any* concrete evidence supporting their claim, NRA merely declares that it has FDCPA compliance policies which its employees are trained on annually, and therefore the "mistake" that occurred must be a bona fide error. Of note, NRA does not present any facts supporting their assertion that NRA employees are trained on these alleged policies and procedures, nor does NRA cite to any supporting documentation or testimony regarding this issue in its Statement of Facts. NRA's lack of law and substance speak for themselves and evidence a complete failure to establish by a preponderance of the evidence that their violations resulted from a bona fide error. Further, NRA's lack of support to any citation of the record is not accordance with Your Honor's Policies and Procedures that specifically note that: "The court will not consider a factual assertion unsupported by a citation to the record."

Even more strange however, is NRA's repeated focus within its two page argument on a different violation than that is currently at issue in this case. This case relates solely to NRA's reaging of Plaintiff's eight LGH accounts, and the LGH accounts of the 13,000 other Class Members. Yet, NRA keeps pointing out to the Court that it has procedures to investigate consumer disputes. NRA does not even mention that it has policies or procedures in place to ensure accurate inputting of consumer information or accurate credit reporting, and the testimony from NRA's corporate representatives indicates that the computer system *does not* in fact have any automatic safeguards to ensure that accounts are being credit reported properly and for the appropriate period of time. *Counterstatement ¶* 21.

The critical issue with NRA's arguments is that this case is simply not about NRA's failure to investigate disputes, and so to the extent that NRA has policies to prevent that error— which Plaintiff vehemently contests based on the deposition testimony obtained in this case— these policies are not helpful to NRA in establishing a defense to its intentional and reckless

9

reaging of thousands of accounts. *Counterstatement, ¶* 7. NRA simply cannot establish the error was unintentional as a matter of law. As addressed more fully within Plaintiff's Motion for Summary Judgment, NRA knew that there were tens of thousands of accounts which were pulled back by LGH, and which were later be returned. Despite attempting deniability, there is no question that NRA knew when it received more than 63,000 accounts in one inventory file, that transmission must have included many accounts being returned. Despite this, NRA made no attempt whatsoever to determine which accounts were being returned in order to ensure proper credit reporting. P-SUMF, ¶ 8; *Counterstatement* ¶17. By treating the returned accounts as brand new, issuing new account numbers, and failing to cross check the returned accounts with the account information in the old system to ensure accuracy, NRA necessarily and intentionally created new dates placed for collection and dates of delinquincy— erroneously as the dates that the accounts were returned. Thus, NRA intentionally violated the Act and intentionally reported false dates to Trans Union.

As to the second prong of the test, NRA simply cannot establish the error was bona fide as a matter of law. To establish that an error is "bona fide," the debt collector must prove that it was a "plausible and reasonable" mistake. *Gebhardt v. LJ Ross Assocs.*, 2017 U.S. Dist. LEXIS 90252, at *10 (D.N.J. June 12, 2017) (citing *Wilhelm v. Credico, Inc*., 519 F.3d 416, 420 (8th Cir. 2008)). Rather than comply with the FDCPA and act fairly in its credit reporting of thousands of accounts, NRA chose to bury its head in the sand and feign ignorance. NRA knew it was receiving returned accounts from LGH but it intentionally failed to determine which of the accounts it was reporting on were returned accounts. P-SUMF, ¶ 8 ("Q. So is there anyone at NRA who would be able to tell us if a particular account that was sent back to Lancaster General was returned to NRA to be placed for collection? A: I don't know that anyone at NRA could tell

10

you that." Exhibit D, 164:9-14). No reasonable jury could find that this conduct is plausible or reasonable.

The glaring nature of the erroneous reporting also evidences that this error is not plausible or reasonable. The date of delinquency is associated with the date the consumer failed to make a timely payment, a date prior to the date of placement with collections and a date following the date of service. *See Counterstatement,* ¶ 18. It would be difficult to believe that a consumer's account would be considered delinquent or referred to collections by a creditor on the same day that the consumer received the service. Further, it is implausible to believe that a creditor would place the account with a collection company on the very day the account became delinquent. Despite this, in 2016, NRA intentionally credit reported to Trans Union both the date of placement and the date of first delinquency as the same date for Plaintiff and over 63,000 unknowing consumers. P-SUMF ¶ 9-13.

The breadth of NRA's false reporting cannot be overlooked. Had the reaging happened to 5 or even ten accounts, this might be an arguably 'reasonable' or 'plausible' error. Instead, the reaging occurred on 63,000 accounts which NRA affirmatively knew or should have known were accounts they had previously been collecting on. P-SUMF ¶8, 11; *Counterstatement* ¶ 17. Had NRA attempted to check even one of the 63,000 accounts, and had NRA understood the meaning of the dates reported, there can be no question that the error would have been discovered. It goes without saying that considering it was credit reporting 63,000 accounts, which effects the financial lives of tens of thousands of people, NRA should have at the very least double checked that the information was being reported correctly. Despite this, NRA had no policies or procedures regarding the inputting of credit data, and no policies or procedures explaining the meaning of the dates reported to the credit bureaus or how to confirm that they were correct. P-

11

SUMF ¶ 14, 15, 17; *Counterstatement* ¶ 17, 21. Given the lack of understanding of these dates by Defendant's two corporate representatives, NRA would also be hard pressed to claim they provided training on this information to their employees. P-SUMF ¶ 17. NRA's failure to conduct even a cursory review which might have identified an error affecting 63,000 people demonstrates that the error is not reasonable and plausible. P-SUMF ¶ 14; *Counterstatement* ¶ 17. Thus, NRA's error cannot be considered bona fide as a matter of law.

      NRA does not address and can certainly not establish that it maintains policies to prevent the specific error at issue from recurring as a matter of law. To assess whether the defendants' procedures satisfy this element involves a two-step inquiry. *Johnson,* 443 F.3d at 729; *Reichert v. Nat'l Credit Sys. Inc.,* 531 F.3d 1002, 1006 (9th Cir. 2008). The first step is "whether the debt collector maintained – i.e. actually employed or implemented – procedures to avoid errors. *Id.* The second step is "whether the procedures were reasonably adapted to avoid the specific error at issue." *Id.* NRA's Motion for Summary Judgment broadly asserted that it maintains procedures to ensure compliance with the FDCPA, and that it trains its employees on compliance annually, but NRA does not provide a single policy as an exhibit, and fails to identify or address a single policy or procedure to avoid the specific error at issue in this case, i.e. reaging. *See* Def MSJ, pg. 11-12. To the contrary, the testimony of NRA's corporate representatives establishes the complete lack of policies or procedures on the inputting of consumer data by the IT Department and NRA has no policy defining the date of delinquency or the date placed for collection, leaving its own employees unsure as to the exact definition of these dates—a shocking reality. P-SUMF ¶ 15, 17. Further, NRA has no policy or procedure concerning how to handle system upgrades and ensure that the information being transferred remains accurate. P-SUMF ¶ 15. In other words, NRA does not maintain even a single policy

12

addressing the specific error at issue as established by the failure of NRA to include reference to a single policy in their underlying Motion. Thus, there is no possible way NRA can establish the third prong of the bona fide error defense.

The purpose of the bona fide error defense is not to protect a debt collector from incidences where it makes a mistake. The FDCPA is a strict liability statute created with the clear intent of holding a debt collector liable for its mistakes. This defense is only to address those rare instances where an error slips through the cracks, despite the debt collector's well maintained policies and procedures which would typically prevent such an error. For instance, in *Gebhardt v. LJ Ross Assocs.*, the debt collector called the consumer 12 minutes after receiving a cease and desist letter indicating the consumer was represented by counsel. 2017 U.S. Dist. LEXIS 90252, at *11 (D.N.J., 2017). There, the debt collector truly established significant procedures demonstrating that the error was really a rare incident that slipped through the cracks despite every effort to prevent it. *See* Plaintiff's Motion for Summary Judgment, page 18.

NRA is simply not entitled to the bona fide error defense. In this case, even if the Court were to hold that NRA's reaging of 63,000 accounts was simply a mistake, this alone is not enough to shield it from liability. Unlike the defendant in *Gebhardt,* NRA has not established its burden of showing that it has adequate policies in place such that this mistake was merely one that slipped through the cracks despite every effort to prevent it. Because the FDCPA is a strict liability statute, NRA must be held accountable under the law. Accordingly, Defendant's Motion for Summary Judgment must be denied.

### IV. CONCLUSION

Defendant NRA knowingly re-aged the two most significant dates to a credit report score: the date of first delinquency and the date placed for collection. Further, Defendant NRA

13

knowingly did this to over 63,000 accounts held by Pennsylvania consumers. There is no question that the FDCPA is violated when when a debt collector reports inaccurate information to the credit reporting agencies. Here, Defendant admits, and the undisputed facts show that Defendant committed this violation. Defendant does not even attempt to argue otherwise in its Motion. Instead, Defendant mistakenly attempts to first, coerce the Court into ruling for a second time regarding Plaintiff's standing and secondly, rely on the only defense available to the FDCPA's strict liability statute: the bona fide error defense. Despite this, Defendant all but acknowledges that they cannot meet this bona fide error standard as it spends only two pages of argument addressing this defense, fails to even identify the test for the Court to apply in its consideration and does not specifically address or include a single policy or procedure as an exhibit to its Motion. As such, Defendant's Motion for Summary Judgment must be dismissed as Defendant has wholly failed to meet its burden of proof.

/S/ Daniel Zemel, Esq.
Daniel Zemel, Esq.
Elizabeth Apostola, Esq.
**Zemel Law LLC**
1373 Broad Street, Suite 203-C
Clifton, New Jersey 07013
(P) (862) 227-3106
dz@zemellawllc.com
ea@zemellawllc.com
Attorneys for Plaintiff and the
Proposed Class

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of July 2018 a true and correct copy of the foregoing

document was sent to all counsel of record via the Court's ECF system.


<u>/s/ Daniel Zemel</u>
Daniel Zemel, Esq.