UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORINE O'DELL, *on behalf of herself and others similarly situated*,<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>NATIONAL RECOVERY AGENY,<br><br>　　　　　　　Defendant. | Civil Action No.: 5:16-cv-05211 |

**DEFENDANT NATIONAL RECOVERY AGENCY'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**GORDON & REES LLP**
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
Tel: (973) 549-2500
Fax: (973) 377-1911
E-mail: psiachos@gordonrees.com
*Attorneys for National Recovery Agency*

*Of Counsel and on the Brief:*

　Peter G. Siachos, Esq.
　Matthew P. Gallo, Esq. (Admitted *pro hac vice*)

Defendant National Recovery Agency ("NRA") by and through its attorneys of record Gordon & Rees, LLP, submits its Memorandum in Opposition to Plaintiff Corine O'Dell's ("Plaintiff") Motion for Summary Judgment ("Motion").

## I. INTRODUCTION:

"[T]he purpose of [the FDCPA is] to eliminate abusive debt collection practices by debt collectors, [but also] *to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged*, and to promote consistent State action to protect consumers against debt collection abuses."[1] This case is not an instance of abusive debt collection practices by NRA targeted at a few individual accounts. Rather, it is an instance of a computer system error despite NRA's clear, documented policies and procedures in place to prevent such errors.

Plaintiff alleges that NRA violated the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq*. (the "FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (the "FCRA") by credit reporting inaccurate information regarding her credit accounts, failing to investigate Plaintiff's disputes, and continuing to contact Plaintiff via letters and phone calls despite her request that NRA cease doing so.[2]

In her Motion, Plaintiff argues that NRA improperly re-aged the accounts in question enabling them to stay on the credit reports of Plaintiff and the Class Members for two years longer than the seven years permissible by law which resulted in decreased credit scores and credit worthiness for Plaintiff and the entire Class.[3] While Plaintiff provided her credit reports, she has provided no evidence that NRA's actions decreased Plaintiff's credit score or

---

[1] 15 U.S.C. § 1692(e).
[2] Dkt. 43.
[3] Plaintiff SUMF, ¶ 16.

1

creditworthiness. Plaintiff further asserts that NRA maintains no policies and procedures regarding the inputting of consumer information, the handling of an inventory or assignment file sent by a creditor for placement, describing how the dates credit reported are determined and NRA's employees are not trained to understand the distinctions in credit reporting terms.[4] This is blatantly false. NRA has provided undisputed evidence that it had documented policies and procedures in place in 2016 and 2017 to prevent violations of the FDCPA and FCRA.[5] Thus, NRA's actions were clearly the result of bona fide error under 15 U.S.C. § 1692k. Simply put, NRA did not violate federal law on an individual or class-wide basis. Rather, NRA committed a bona fide error due to its computer system upgrade, which assigned new account numbers to all accounts that were returned by Lancaster General Health ("LGH") to NRA. NRA realized its error and remedied the situation in short order. Plaintiff was not damaged. Likewise, there was no violation of statute, technical or otherwise.

Additionally, Plaintiff lacks Article III standing to bring this case in the first place as Plaintiff cannot produce evidence that either she or the putative class members have suffered an injury-in-fact as a result of NRA's actions. Furthermore, the issues claimed by Plaintiff are not ripe for adjudication as neither 2020 nor 2022 has yet to arrive. In any event, Plaitniff's claims are moot because NRA remedied the bona fide error before 2020 (and before 2022 too).

As Plaintiff cannot show that no genuine dispute of material fact exists, NRA respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment, and grant NRA's separately filed Motion for Summary Judgment.

**II.     FACTUAL BACKGROUND**

    **A.     Plaintiff's Eight Lancaster General Hospital Accounts**

---

[4] Plaintiff Statement of Undisputed Material Facts ("SUMF"), ¶¶ 15, 17.
[5] Dkt. 90-7, *Deposition of Ashley Chille ("Chille Deposition")*, 19:13- 25: 20.

Plaintiff's lawsuit arises from her eight debts owed to LGH, including account numbers ****3030, ****3082, ****3100, ****3113, ****3276, ****3312 and ****3168.[6] All eight accounts were originally assigned to NRA by LGH for collection in 2013.[7] NRA was credit reporting all eight of Plaintiff's LGH accounts to the credit bureaus which remained in default.[8] As such, Plaintiff's accounts were scheduled to be removed in 2020, after seven years of reporting as required by the FDCPA.[9]

### B. Lancaster General Hospital's Recall of Accounts from NRA

In April 2015, LGH recalled all of its active accounts from NRA due to LGH's ongoing computer system upgrades.[10] Plaintiff's eight accounts were amongst those active accounts recalled.[11] Once the accounts were recalled by LGH, they were closed in NRA's system and the corresponding trade lines were deleted.[12]

### C. NRA Upgrades Its Computer System

In 2016, NRA began converting its debt manager computer system from Platinum to DM9,[13] converting approximately 99 percent of its system by June 2017.[14] The computer system change resulted in drastic changes to NRA's internal computer systems, but all consumer

---

[6] *See* Dkt. 43 at ¶ 10.

[7] *Id*.

[8] *Id.* at ¶¶ 10, 17.

[9] *Id.*

[10] *See* Dkt. 90-6, *Deposition of Gregory Dickensheets ("Dickensheets Deposition")* at 42.

[11] *See Id.*; *see also* Dkt. 90-7, *Chille Deposition*, at 162.

[12] *See Id.* at 176:5-13; Dkt. 90-8, Account Notes.

[13] The DM9 system upgrade gives NRA increased account retrieving and reporting capability, whereas the Platinum system has "limited reporting capability." *See* Dkt. 90-6, *Dickensheets Deposition*, at 39:13-25.

[14] *See* Dkt. 90-6, *Dickensheets Deposition,* at 39:2-19.

3

accounts remained unaffected.[15]

      **D.**    <u>**Lancaster General Hospital's Reassignment of Debt Accounts to NRA**</u>

In or around December 2015, LGH began placing its previously recalled accounts, including Plaintiff's accounts, back with NRA.[16] These accounts were uploaded or transferred into NRA's new system, DM9.[17] When placed into the new system, the system assigned each account a new account number, as the system was not programmed to preserve the old numbers due to formatting differences.[18] The system conversion thus made cross-checking the accounts between the Platinum and DM9 systems extremely difficult.[19]

Despite its difficulty, NRA attempted to translate the activity and status codes between the two systems.[20] NRA's new system, however, also set the returned accounts' delinquency dates as their placement date due to the formatting update.[21] As a result, NRA allegedly credit reported Plaintiff's accounts with the incorrect date of service and delinquency as 2015 instead of 2013. Due to this bona fide error, Plaintiff alleges that NRA's trade lines would remain on her credit report until 2022, instead of 2020.[22] NRA, however, relies on background coding for their trade lines and does not directly broadcast the timeframe of credit reporting on consumers' reports.[23]

---

[15] *Id.*
[16] *Id*. at 42:2-4.
[17] *Id.* at 42-45.
[18] *Id.* at 45:4-10.
[19] *Id.* at 42-45.
[20] *Id*. at 52-53.
[21] *Id*. at 53:19-54:1.
[22] *See* Dkt. 43 at ¶ 17.
[23] *See* Dkt. 90-7, *Chille Deposition,* at 186:14-188: 9.

      **E.**      **NRA Cured Its Mistake As Soon As Possible**

On or around April 25, 2016, NRA received a trade line dispute from Plaintiff, immediately verified the debt and deleted the trade line altogether.[24] Following receipt of Plaintiff's dispute NRA did not attempt to collect on her debts.[25] Moreover, NRA had policies and procedures in place to ensure that consumers receive explanations and verifying documentation in response to trade line disputes.[26] NRA has provided these documented policies and procedures to Plaintiff. It is undisputed that these policies and procedures were in place during 2013-2017, when NRA credit reported Plaintiff's and the putative class members' LGH accounts, when LGH recalled the accounts, when LGH placed the accounts back with NRA, and when NRA credit reported the accounts again. NRA has been completely transparent with Plaintiff on this issue. The FDCPA's bona fide error defense covers precisely this type of behavior. Thus, NRA is without fault under the FDCPA.

Therefore, NRA requests that this Court deny Plaintiff's Motion and instead grant NRA's separately filed Motion for Summary Judgment on the basis that Plaintiff cannot establish one or more elements of her FDCPA and FCRA claims and NRA is entitled to a judgment as a matter of fact and law.

**III.**      **STANDARD OF REVIEW**

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[27] In considering a motion for summary judgment, this court must construe all facts and reasonable inferences in a light that is most

---

[24] *See Id.*, at 204:1-2; Dkt. 90-8, Account Notes.

[25] *See* Dkt. 90-8, Account Notes.

[26] *See* Dkt. 90-6, *Dickensheets Deposition*, at 33-37.

[27] Fed. R. Civ. P. 56(c).

favorable to the non-moving party.[28] A "genuine" issue is one where the evidence could cause a reasonable trier of fact to return a finding favorable to the nonmoving party.[29] At the focal point of summary judgment analysis is the consideration of "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[30] A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.[31]

Plaintiff, as the party seeking summary judgment must provide the Court a clearly-articulated basis for its motion.[32] Also necessarily required of the moving party is for it to establish that no genuine issue of material fact can be shown to exist with respect to the Plaintiff's case and that it must prevail as a matter of law, or alternatively, demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden.[33]

Upon satisfying this threshold showing, the burden then shifts to the nonmoving party. The nonmoving party must then demonstrate the existence of a genuine issue of material fact justifying trial, through the use of permissible evidentiary devices or as otherwise provided in Rule 56(e) of the Federal Rules of Civil Procedure. The court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of

---

[28] *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *Peters v. Delaware River Port Authority*, 16 F.3d 1346, 1349 (3d Cir. 1994).

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-326 (1986); *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3rd Cir. 2007).

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

[31] *Id.* at 247-48.

[32] *Celotex Corp.*, 477 U.S. at 323.

[33] *Id.* at 322-323.

record is such that a reasonable jury could return a verdict for the nonmoving party.[34]

It is not appropriate for the court to undertake credibility determinations at the summary judgment stage.[35] The court may, however, factor into its consideration material evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.[36]

If both parties have moved for summary judgment, the court evaluates each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.[37]

## IV. LEGAL ARGUMENTS

### A. Plaintiff Lacks Article III Standing

The uncontroverted evidence clearly shows that Plaintiff lacks Article III standing to bring her FDCPA and FCRA claims, as she suffered no injury in fact, whether in the form of decreased credit score or decreased credit worthiness. Although Plaintiff claims that she and other Class members have suffered both, she has provided no evidence to pinpoint her injury in support of her Motion. Merely providing credit reports without showing how and why NRA's actions resulted in the alleged harm will not sustain Plaintiff's Motion.

To satisfy the standing requirements of Article III, a plaintiff must show (1) an injury in fact that is concrete and particularized, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) redressable by a favorable decision.[38] "The party invoking federal jurisdiction

---

[34] *Id.* at 249; *High v. Butler County Family YMCA*, 418 F.3d 265, 266 (3rd Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3rd Cir. 2001).

[35] *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3rd Cir. 1198).

[36] *Pollack v. Newark,* 248 F.2d 543 (3d Cir. 1957).

[37] *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987).

[38] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

bears the burden of establishing these elements."[39] The Supreme Court recently reemphasized the importance of the Article III standing requirements, particularly the requirement of an injury that is both concrete and particularized.[40] It wrote:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.[41]

### 1. *Plaintiff Has Suffered No Injury-In-Fact*

Despite Plaintiff's assertion in her Motion that "her credit worthiness was affected" by NRA's allegedly inaccurate reporting[42], Plaintiff has presented no evidence whatsoever that she suffered any concrete financial damage or high interest rates. Plaintiff can pinpoint no actual harm resulting from NRA's alleged behavior. Thus, Plaintiff did not suffer an injury-in-fact necessary to support Article III standing. Plaintiff has failed to show how her credit score was affected by the nine trade lines reported in 2016, as opposed to the eight previously reported trade lines from 2012 and 2013. She has presented no evidence of "diminished creditworthiness" and no expert report regarding how a re-aged account could have long term effects on her credit. In the same vein, if Plaintiff and the putative class members' credit scores were somehow affected by NRA's bona fide error, which NRA vehemently disputes, there is no way to determine how each member's score was changed, or if it was changed at all.

It is well-settled that a named plaintiff in a class action lawsuit is required to establish

---

[39] *Id*. at 561.

[40] *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

[41] *Id*. at 1549.

[42] Dkt. 88-1, at p. 3.

Article III standing.[43] Here, Plaintiff has failed to provide any evidence of injury in fact, which raises the question of whether she is even a member of the putative class.[44]

In granting Plaintiff's Motion to Certify her class, the Court specifically noted that this is a "tenuous case involving a technical violation, and the harm is difficult to pinpoint."[45] Although the Court stated in its Opinion that Plaintiff has Article III standing, she has since shown absolutely no injury to her credit sustained as a result of NRA's alleged actions.

NRA ceased credit reporting on Plaintiff's accounts and deleted the trade lines when it realized its bona fide error, so interim events have completed and irrevocably eradicated the effects of NRA's alleged violations. As such, Plaintiff's eight trade lines, which were scheduled to come off her credit report in 2022 based on the re-reporting in 2016, will no longer be reported to the credit bureaus. Rather, the trade lines were deleted and Plaintiff's accounts were closed. Had NRA failed to correct its error and continued to report Plaintiff's incorrect trade lines into 2021 and 2022, after the 2013 credit lines were supposed to be removed, Plaintiff's claim would have merit. That did not occur here.

Plaintiff has failed to show how NRA's alleged re-aging of LGH accounts affected the credit scores of Plaintiff and class members. Presumably, Plaintiff failed to include this in her

---

[43] *See Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quotations and citations omitted)); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."); *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (Citations omitted)); *Winer Family Trust v. Queen*, 503 F.3d, 319, 326 (3d Cir. 2007) ("The initial inquiry in either case is whether the lead plaintiff individually has standing.").

[44] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).

[45] Dkt. 78.

commonality analysis because she would clearly fail to meet her burden in proving commonality and typicality on this very point. Credit reports and scores are fluid and change constantly based on several different factors, including: the number of trade lines; the nature of the consumer's various debt delinquencies; the rate of payment; history of payment; and the amounts of debt on a credit report as a whole. All of these factors influence one's credit score. Without Plaintiff's credit information before and after NRA's error, or at least an expert report, it is difficult, if not impossible, to pinpoint whether Plaintiff's score and future creditworthiness were damaged by NRA's innocent programming error. Plaintiff simply ignores this issue and offers no evidence of damage to her credit worthiness in particular, and certainly no expert reports regarding potential credit reporting scenarios and their impact on various different scores.

Thus, the undisputed evidence does not show that Plaintiff's suffered an injury in fact.

### 2. *Plaintiff's Claims Are Moot*

Furthermore, Plaintiff's case is moot as NRA remedied its bona fide error immediately by deleting the incorrect trade lines from Plaintiff's credit report. The general test for mootness, as articulated by the Supreme Court, is that a case becomes moot only if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.[46] The purpose of an injunction is to prevent future violations[47], and, of course, it can be utilized even without a showing of past wrongs.[48]

But the moving party must convince the court that relief is needed.[49] There must be some

---

[46] *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979).

[47] *Swift & Co. v. United States,* 276 U.S. 311, 326 (1928)

[48] *Id.*

[49] *Id.*

cognizable danger of recurrent violation; something more than the mere possibility which serves to keep the case alive.[50] NRA's alleged conduct is not subject to repetition because Plaintiff's claims are limited to the LGH accounts that were assigned and recalled to NRA during LGH's and NRA's computer system updates in or around December 2015. Furthermore, NRA ceased credit reporting on Plaintiff's accounts and deleted the eight trade lines, which were scheduled to come off her credit report in 2022 based on their re-reporting in 2016, when it realized its bona fide error. Accordingly, they will no longer be reported to the credit bureaus. Had NRA failed to correct its error and continued to report Plaintiff's incorrect trade lines in 2021 and 2022, after the 2013 credit lines were supposed to be removed, Plaintiff's claim would have merit.  That did not occur here.

As this Court held in its Opinion Granting Plaintiff's Class Certification, Plaintiff's request for injunctive relief is "likely moot."[51] NRA has already deleted or corrected Plaintiff's trade lines at issue in this case.  Additionally, as stated above, in order for NRA's alleged conduct to recur, LGH would have to upgrade its computer systems again *and* NRA would have to improperly age the accounts again. Given the unlikelihood of recurrence, an injunction will not provide meaningful relief.

Plaintiff has presented no evidence that her claims for monetary damages are likely to provide meaningful relief. Thus, Plaintiff's claims for monetary damages are moot as well. The uncontroverted evidence shows that Plaintiff was not denied any loans or charged higher interest rates as a result of NRA's actions.[52] Furthermore, Plaintiff did not make any payments on the LGH debts as a result of seeing her credit report and still has not made payments on the LGH

---

[50] *Id.*

[51] Dkt. 78.

[52] Dkt. 90-9, *Plaintiff Deposition*, at 13:23-14:10; 18:11-24; 30:5-7.

debts.[53] Thus, Plaintiff's claims for monetary relief are unlikely to provide meaningful relief and are moot as well.

### B. NRA's Actions Were a Result of Bona Fide Error

In her Motion, Plaintiff claims that NRA cannot present a genuine issue of material fact regarding its liability under the FDCPA and cannot meet the elements required to claim bona fide error, and as such, Plaintiff's Motion for Summary Judgment should be granted. Plaintiff, however, has not proved that there is no dispute of fact regarding NRA's bona fide error defense. In *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005), the court explained that a debt collector qualifies for the bona fide error defense when "(1) it did not intentionally violate the FDCPA . . . ; (2) any such presumed violation resulted from a bona fide error . . . ; and (3) it maintained procedures reasonably adapted to avoid any such assumed error . . ." Although Plaintiff boldly claims that NRA's FDCPA violation was intentional and there were no policies and procedures in place to prevent this type of error, she provides no evidence to support these assertions. On the other hand, NRA has provided ample evidence that an FDCPA violation arising from the computer system upgrade was unintenional, but rather due to an underlying bona fide error that occurred despite maintenance of procedures reasonably adapted to avoid any such errors.[54]

#### 1. The Violation Was Unintentional

Plaintiff asserts that NRA *intended* to provide inaccurate information to Trans Union. Whether the violation was unintentional is a subjective inquiry. A court must apply a subjective test "that requires a credibility determination concerning the debt collector's assertions that the

---

[53] *Id*. at 29:9-23.

[54] *See Richberg v. Palisades Collection, LLC*, 247 F.R.D. 457, 467 (E.D. Pa. 2008); *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006).

ensuing FDCPA violation was unintentional."[55] "A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional."[56] In *Nielson v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002), the court noted that a debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate." Similarly, the court in *Lewis v ACB Bus. Servs., Inc.*, 135 F.3D 389, 402 (6th Cir. 1998) explained, "The debt collector must only show that the violation was unintentional, not that the comunication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense." In this case, the fact that NRA intended to provide information to Trans Union cannot be equated with an intention to provide inaccurate information and intentionally violate the FDCPA. Plaintiff provides no evidence whatsoever that NRA's alleged violation was intentional.

### 2. The Violation Was Bona Fide

NRA's error was bona fide. An error is bona fide when it is "made in good faith; a genuine mistake, as opposed to a contrived mistake."[57] In *Hubbard v. National Bond & Collection Assoc., Inc.*, 126 B.R. 422 (D. Del. 1991), the court noted that an FDCPA violation resulting from a clerical error, such as a computer failure, qualified as a bona fide error under Section 1692k(c). In that case, the defendant debt collector mailed a computer generated collection letter to the plaintiff after she filed for bankruptcy.[58] An affirmative defense under Section 1692k(c) would be established if the violation occurred due to an "inadvertent clerical

---

[55] *Agostino v. Quest Diagnostics, Inc.*, 2011 U.S. Dist. LEXIS 127904 (D.N.J. Nov. 3, 2011) (citing *Johnson v. Riddle*, 443 F.3d 723, 728-29 (10th Cir. 2006)); *Gebhardt v. LJ Ross Assocs.*, 2017 U.S. Dist. LEXIS 90252, at *10 (D.N.J. June 12, 2017).

[56] *Kort*, 394 F.3d at 537.

[57] *Id.* at 538 (citing Black's Law Dictionary 168 (7th ed. 1999) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; genuine")).

[58] *Hubbard*, 126 B.R. at 424-25.

error of a nature that is reasonably guarded against."[59]  Particularly relevant to the within matter, the court stated the following:

> An example of such a clerical error would be, if after [plaintiff] had contacted the defendant to inform it that she had filed for bankruptcy, the defendant had then entered a notation on its computer that no further communications should be sent to [plaintiff], but *due to some failure in the computer*, a second letter did in fact get sent to [plaintiff].[60]

A few weeks ago, the prinicple that a computer failure qualified as a bona fide error was reaffirmed in *Dautrich v. Nationstar Mortg., LLC*, No. 15-8278, 2018 U.S. Dist. LEXIS 109039 (D.N.J. June 29, 2018).  In that case, the defendant sent multiple letters that stated an eroenous figure for the amount required to bring the plaintiffs' loan current.[61]  The defendant asserted that the incorrect figure was caused by a computer "glitch" that prevented dollar amounts with more than seven digits from being auto-populated in its letters.[62]  After noting that the erroneous figure originated from a computer program glitch, the court stated:

> This is the type of "clerical . . . mistake[]" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010), to which the bona fide error defense may apply. Likewise, the failure of Nationstar's employees to identify and correct the computer glitch upon review of the computer-generated letter is a clerical mistake to which the defense may apply. Accordingly, the Court holds that Nationstar has carried its burden of establishing the second prong of the defense.[63]

In this case, the uncontroverted evidence clearly shows that the trade line errors only occurred because both LGH and NRA were updating their computer systems **at the same time**. NRA began converting its computer system to DM9 in 2016. LGH assigned Plaintiff's eight

---

[59] *Id.* at 429.

[60] *Id.* at 429 n.4 (emphasis added).

[61] *Dautrich*, 2018 U.S. Dist. LEXIS at *9.

[62] *Id.* at *9-10.

[63] *Id.* at *21-22 (as appears in original).

debts to NRA for collection in 2013.[64] NRA closed those the recalled accounts in its system and requested that the corresponding trade lines be deleted in April 2015 when LGH recalled all of its active accounts from NRA.[65] LGH then placed Plaintiff's eight accounts back with NRA in or around December 2015.[66] Due to formatting differences in NRA's new DM9 system, Plaintiff's eight accounts were assigned new account numbers.[67] NRA's new system also set the returned accounts' delinquency dates as their placement date.[68] NRA attempted to translate the activity and status codes between the two systems, the difficulty in properly cross-referencing the accounts between systems led to the inadvertent alleged credit reporting errors.

Thus, this wasn't an instance of NRA purposefully and intentionally reporting incorrect information to the credit bureaus, as Plaintiff would have the Court believe. Rather, it is abundantly clear from NRA's testimony that the only way this error happened was due to a "perfect storm" created when two companies updated their computer systems simultaneously and accounts transferring back and forth during the upgrades.

Further, Plaintiff asserts in her motion that the over 63,000 accounts recalled and then replaced by LGH could and should have been tracked and cross-referenced, as if this case revolves around a couple of accounts that can be easily tracked and cross referenced, even though the creditor and servicer are both upgrading systems and changing reference numbers. Both Ashley Chille and Gregory Dickensheets testified that NRA attempted to translate the activity and status codes for the 63,000 accounts between the two systems and cross-reference the accounts. However, the difference in activity and status codes between systems led to the

---

[64] Dkt. 90-7, *Chille Deposition,* at 23:4-25:20.

[65] Dkt. 90-6, *Dickensheets Deposition,* at 42; Dkt. 90-7, *Chille Deposition,* at 162, 176:5-13.

[66] Dkt. 90-6, *Dickensheets Deposition,* at 42:2-4.

[67] *Id. at* 42-45.

[68] *Id*. at 53:19-25; 54:1.

15

inadvertent alleged credit reporting errors.

### 3. NRA Has Strict, Documented Policies and Procedures in Place to Guard Against FDCPA and FCRA Violations

NRA has strict, documented policies and procedures in place to ensure that its collection representatives comply with all federal regulations, including the FDCPA and FCRA.[69] All employees are required to attend training on federal laws every year.[70] Furthermore, NRA's policies and procedures in place from 2015 to 2017, which were produced to Plaintiff in Discovery, specifically train NRA employees on how to process consumer disputes. Furthermore, Ashley Chille, General Corporate Counsel for NRA, reviews the dispute system every day to ensure that employees are complying with various federal laws and training.[71]

*Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010) and *Jarzyna v. Home Properties, LP*, 114 F. Supp. 3d 243, 268 (E.D. Pa. 2015), the cases upon which Plaintiff relies, are distinguishable from the within matter as the debt collectors in those cases did not offer evidence of company policies or procedures to avoid the alleged violations. Courts have held that policies and procedures similar to those implemented by NRA are sufficient. For example, in *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420-21 (8th Cir. 2008), the debt collector was entitled to summary judgment upon showing that its employees received specific instructions regarding the separation of principal and interest although the error to be avoided in that case was not complex. In *Jenkins v. Heintz*, 124 F.3d 824, 834-35 (7th Cir. 1997), the court held that a debt collector whose policies and procedures included an in-house compliance manual, training seminars for employees, and a pre-litigation review process proved

---

[69] Dkt. 90-7, *Chille Deposition*, at 19:13-19.
[70] *Id*. at 21:23-22:7.
[71] *Id.* at 23:4-25: 20.

this affirmative defense. "Moreover, a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c)."[72]

Plaintiff alleges that NRA has no set policies and procedures pertaining to this specific situation. That is because this situation was a one-off situation and thus highly unlikely to occur again in the future. The *Kort* Court explained, "§ 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."[73] In *Beck v. Maximus, Inc.*, 457 F.3d 291, 299 (3rd Cir. 2006), the Third Circuit made note of *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) wherein "a debt collector could have done more to prevent the specific error, but '§ 1692k(c) only requires collectors to adopt reasonable procedures' to avoid errors under the Fair Debt Collection Practice Act."

Section 1692k(c) seeks precisely to excuse from liability these types of situations where the error made was bona fide. NRA's conduct was in no way intentional. Furthermore, as soon as NRA received a trade line dispute from Plaintiff regarding the last remaining trade line, it verified the debt and deleted the trade line altogether, as NRA's policies and procedures dictate. NRA did not attempt to collect on Plaintiff's debts following receipt of her dispute.

Further, NRA's policies and procedures ensured that consumers would receive explanations and verifying documentation in response to trade line disputes.[74] It is undisputed that these policies and procedures were in effect during the life of Plaintiff's accounts between 2013 and 2017. NRA was fully transparent with regards to Plaintiff's accounts. The FDCPA's bona fide error defense excuses this very behavior from liability and thus NRA is without fault

---

[72] *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 647 (D. Md. 2010) (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)).

[73] *Kort*, 394 F.3d at 539.

[74] Dkt. 90-6, *Dickensheets Deposition,* at 33-37.

under the FDCPA.

**V.     CONCLUSION**

Plaintiff cannot establish that she was injured-in-fact by NRA's actions, either in the form of decreased credit score or creditworthiness and is not capable of proving that she has standing to assert her claims. Furthermore, Plaintiff's assertions that NRA acted intentionally and did not commit a bona fide error are not based in fact or undisputed evidence. NRA is shielded from FDCPA liability by 15 U.S.C. § 1692k(c) as its incorrect credit reporting was a result of bona fide error. Therefore, NRA respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment.

        GORDON & REES LLP
*Attorneys for Defendant National Recovery Agency*

By:     */s/Peter G. Siachos*
       Peter G. Siachos
       Matthew P. Gallo (*pro hac vice*)

18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
Tel: (973) 549-2500
Fax: (973) 377-1911
E-mail: psiachos@gordonrees.com